IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Russell Lee Sims, | ) | C/A No. 0:15-1510-BHH-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden McFadden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Russell Lee Sims, a self-represented state prisoner, filed this petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  This matter comes before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on

the respondent's motion for summary judgment.  (ECF No. 15.)  Pursuant to Roseboro v. Garrison,

528 F.2d 309 (4th Cir. 1975), Sims was advised of the summary judgment and dismissal procedures

and the possible consequences if he failed to respond adequately to the respondent's motion.  (ECF

No. 16.)  Sims filed a response in opposition to the respondent's motion.  (ECF No. 22.)  In addition,

Sims filed a motion requesting a psychiatric evaluation.  (ECF No. 25.)  Having carefully considered

the parties' submissions and the record in this case, the court concludes that the respondent's motion

for summary judgment should be granted and Sims's Petition denied.

**BACKGROUND**

Sims was indicted in August 2006 in Spartanburg County for four counts of pointing and

presenting a firearm, murder, possession of a weapon during the commission of a violent crime,

attempted armed robbery, and assault and battery with intent to kill.  Sims was further indicted in

January 2007 in Spartanburg County for assault and battery with intent to kill, burglary in the first

PJG

degree, and armed robbery.  (ECF No. 14-3 at 80 through ECF No. 14-4 at 30.)  Sims was

represented by William H. McPherson, Esquire, and Clay Allen, Esquire, and on January 22-24,

2007 was tried before a jury and found guilty of murder, possession of a firearm during the

commission of a violent crime, first degree burglary, two counts of assault of a high and aggravated

nature (as lesser included offenses of the assault and battery with intent to kill charges), armed

robbery, attempted armed robbery, and four counts of pointing and presenting a firearm at a person.

(App. at 420-21, ECF No. 14-2 at 176-77.)  The circuit court sentenced Sims to life imprisonment

for murder, five years' imprisonment for possession of a firearm during the commission of a violent

crime, life imprisonment for burglary in the first degree, five years' imprisonment for each of the

convictions of assault of a high and aggravated nature, thirty years' imprisonment for armed robbery,

twenty years' imprisonment for attempted armed robbery, and five years' imprisonment for each

conviction of pointing and presenting a firearm at a person.  (App. at 426-28, ECF No. 14-2 at 182-

84.)

Sims timely appealed and was represented by Joseph L. Savitz, III, Esquire, of the South

Carolina Commission Office of Appellate Defense, who filed a brief on Sims's behalf that raised the

following issue:

> The trial judge committed reversible error by refusing to instruct the jury on the
> lesser-included offense of voluntary manslaughter, since Sims testified that he killed
> his girlfriend's father after he pointed a gun at him and they "tussled."

(App. at 430-37, ECF No. 14-2 at 186-93.)  On February 2, 2010 the South Carolina Court of

Appeals affirmed Sims's conviction and sentence.  (State v. Sims, Op. No. 2010-UP-080 (S.C. Ct.

App. Feb. 2, 2010), App at 465-66, ECF No. 14-2 at 221-22.)  Sims filed a petition for rehearing.

(App at 467-68, ECF No. 14-2 at 223-24.)  The South Carolina Court of Appeals denied the petition



for rehearing on March 18, 2010.  (State v. Sims, Op. No. 2010-UP-080 (S.C. Ct. App. Mar. 18, 2010), ECF No. 14-6.)

Sims filed a petition for a writ of certiorari with the South Carolina Supreme Court on June 18, 2010 in which he raised the following issue:

> The Court of Appeals committed reversible error of law by affirming the trial judge's refusal to instruct the jury on the less-included offense of voluntary manslaughter, where there was evidence Sims killed his girlfriend's father after he pointed a gun at him and they "tussled."

(App. at 472-78, ECF No. 14-2 at 228-34.)  The State filed a return.  (App. at 480-503, ECF No. 14-2 at 236 through ECF No. 14-3 at 5.)  By letter order filed May 25, 2011, the South Carolina Supreme Court denied Sims's petition for a writ of certiorari.  (App. at 505, ECF No. 14-3 at 7.)  The remittitur was issued on May 27, 2011.  (App. at 506, ECF No. 14-3 at 8.)

Sims filed a *pro se* application for post-conviction relief ("PCR") on August 15, 2011 in which he raised the following claims:  (1) ineffective assistance of counsel in that counsel failed to investigate and prepare for trial, and (2) denial of his Sixth and Fourteenth Amendment rights.  (See Sims v. State of South Carolina, 11-CP-42-3578; App. at 507-13, ECF No. 14-3 at 9-15.)  The State filed a return.  (App. at 514-18, ECF No. 14-3 at 16-20.)  On November 15, 2013, the PCR court held an evidentiary hearing at which Sims appeared and testified and was represented by Christopher D. Brough, Esquire.  By order filed March 6, 2014 the PCR court denied and dismissed with prejudice Sims's PCR application.  (App. at 569-77, ECF No. 14-3 at 71-79.)

*PJG*

On appeal, Sims was represented by Susan B. Hackett, Esquire, Appellate Defender with the South Carolina Commission on Indigent Defense, who filed a <u>Johnson</u>[1] petition for a writ of certiorari that presented the following issue:

> Did trial counsel's failure to obtain the medical records of the deceased and to use those medical records to cross-examine the deceased's treating physician to demonstrate the deceased's death was not the result of the gunshot wound, but was caused by the deceased's poor health violate Petitioner's constitutional right to the effective assistance of counsel?

(ECF No. 14-8.)   Sims filed a *pro se* response to the <u>Johnson</u> petition in which he raised the following issues:

> (1)    Did the trial counsel's failure to subpeona missing witness violate petitioner's 6th Amendment Constitutional Right?
>
> (2)    Did trial counsel's failure to object to the reading of the indictment and entering of the indictment into evidence for the jury to view during deliberation violate petitioner's Constitutional Right?
>
> (3)    Did trial counsel's failure to request that jury be instructed that it could, but was not required to draw negative inference when party fails to preserve material evidence for trial where spoliation-of-evidence was warranted violate petitioner's Constitutional rights?

(ECF No. 14-10.)  On March 4, 2015, the South Carolina Supreme Court issued an order denying Sims's petition for a writ of certiorari.  (ECF No. 14-11.)  The remittitur was issued on March 20, 2015.  (ECF No. 14-12.)  This action followed.

---

[1] <u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988) (applying the factors in <u>Anders v. California</u>, 386 U.S. 738 (1967) to post-conviction appeals).  <u>Anders</u> requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  <u>Anders</u>, 386 U.S. at 744.



**FEDERAL HABEAS ISSUES**

Sims's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:**  The trial court abused its[] discretion by allowing prosecutorial misconduct, where the solicitor commented on my not calling witnesses, shifting the burden of proof.
**Supporting Facts:**  An accused is presumed innocent until proven guilty.  The burden is upon the state to prove the accused committed the crime charged.  An accused has the right to rely entirely upon this presumption of innocense, the weakness in the state's case against him + has no burden to produce witnesses.  He would clearly be deprived of that right if an adverse inference is permitted to be indulged against him because he does not produce witnesses.

**Ground Two:**  Trial counsel failed to investigate & obtain the medical records of the deceased & to use same to cross-examine the deceased's treating physician & subpoena Prince & Keller to demonstrate the deceased's death was not the result of the gunshot wound, but was caused by the hospital's medical malpractice.
**Supporting Facts:**  Witnesses Suzzane Prince + Judy Keller has relevant information as to proximate cause of death.  Prince and Keller gave a deposition to the police or signed a written statement reflecting their knowledge of the case.  See attached EXHIBIT #1 – Coroner's investigation notes.  At 9:20 am on July 8th 2006 Coroner [] Schuler spoke with Prince + Keller, who advised Schuler that the victim was transferred to restorative care on June 13, 2006 from Spartanburg Regional Medical Center with 3 gunshot wounds to the neck area. Pathologist Dr. David Wren did an autopsy and indicated that there was only one bullet wound.  Raising the question of where the other holes come from.

(Pet., ECF No. 1) (errors in original; citations omitted).

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

Page 5 of  20



evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary

judgment "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving

party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."

Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once

the moving party makes this showing, however, the opposing party may not rest upon mere

allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth

specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex

Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a

petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g.,

Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the

court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor

can the court assume the existence of a genuine issue of material fact where none exists.  Weller v.

Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas



corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103).  Under the AEDPA, a state court's decision "must be granted a deference and

PJG

latitude that are not in operation" when the case is being considered on direct review.  Harrington,

562 U.S. at 101.  Moreover, review of a state court decision under the AEDPA standard does not

require an opinion from the state court explaining its reasoning.  See id. at 98 (finding that "[t]here

is no text in [§ 2254] requiring a statement of reasons" by the state court).  If no explanation

accompanies the state court's decision, a federal habeas petitioner must show that there was no

reasonable basis for the state court to deny relief.  Id.  Pursuant to § 2254(d), a federal habeas court

must (1) determine what arguments or theories supported or could have supported the state court's

decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding of a prior decision of the United States

Supreme Court.  Id. at 102. "If this standard is difficult to meet, that is because it was meant to be."

Id.  Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions

in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."

Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in

judgment)).

C.      Exhaustion Requirements

        A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his

state court remedies.  28  U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas

petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911

(4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir.

2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,

471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of

Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have

PJG

exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner

must "fairly present[] to the state court both the operative facts and the controlling legal principles

associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal

quotation marks and citation omitted). Thus, a federal court may consider only those issues which

have been properly presented to the state appellate courts with jurisdiction to decide them.

Generally, a federal habeas court should not review the merits of claims that would be found to be

procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence

v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v.

Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by

a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice

as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims

will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.      Summary Judgment Motion**

      **1.      Ground One:  Prosecutorial Misconduct**

In Ground One, Sims asserts that the trial court abused its discretion by allowing

prosecutorial misconduct where the solicitor commented on Sims's not calling witnesses, thus

shifting the burden of proof. (Pet., ECF No. 1 at 5.) Respondent's motion for summary judgment

argues that Sims's Ground One is both procedurally barred and without merit. (Resp.'s Mot. Summ.

J., ECF No. 14 at 18-28.) In his response in opposition to the motion for summary judgment, Sims

voluntarily withdraws and abandons Ground One. (Petr.'s Resp. Mot. Summ. J., ECF No. 22 at 3.)

Accordingly, the court considers Ground One to be withdrawn by Sims and proceeds to Ground

Two.



**2.      Ground Two:  Ineffective Assistance of Trial Counsel**

In Ground Two, Sims argues that trial counsel was ineffective in (1) failing to investigate and obtain medical records of the deceased and using them to cross-examine the deceased's treating physician and (2) failing to subpoena nurse Suzanne Prince and nurse Judy Keller to demonstrate the deceased's death was not the result of the gunshot wound, but was caused by the hospital's medical malpractice.  (Pet., ECF No. 1 at 7.)  After a careful review of the parties' briefs and the entire record, for the reasons discussed below, the court finds that Sims's Ground Two is without merit.

A defendant has a constitutional right to the effective assistance of counsel.  To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  Strickland, 466 U.S. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").  To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution.  With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)."  Harrington, 562 U.S. at 105.  The Court observed that while "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing



that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more

difficult." <u>Id.</u> (quoting <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010)).  The Court instructed that

the standards created under <u>Strickland</u> and § 2254(d) are both "'highly deferential,' and when the

two apply in tandem, review is 'doubly' so." <u>Id.</u> (citations omitted).  Thus, when a federal habeas

court reviews a state court's determination regarding an ineffective assistance of counsel claim,

"[t]he question is not whether counsel's actions were reasonable.  The question is whether there is

any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u>

Although the Supreme Court has held that a decision containing a reasoned explanation is

not required from the state court, in the case at bar, this court has the benefit of the PCR court's

written opinion, certiorari review of which was denied by the South Carolina Supreme Court, which

may provide reasons or theories that the appellate court could have relied upon in summarily denying

Sims's petition.    Therefore,  the  court  turns  to  the  question  whether  the  PCR  court's  order

unreasonably misapplied federal law or was based on an unreasonable determination of the facts.

Relevant to the instant claim, the PCR court determined:

> First, the Applicant must prove that counsel's performance was deficient.
> Under this prong, attorney performance is measured by its "reasonableness under
> professional norms." <u>Cherry</u>, 300 S.C. at 117, 385 S.E.2d at 625, *citing* <u>Strickland</u>.
> Second, counsel's deficient performance must have prejudiced the Applicant such
> that "there is a reasonable probability that, but for counsel's unprofessional errors,
> the result of the proceeding would have been different." <u>Cherry</u>, 300 S.C. at 117-18,
> 386 S.E.2d at 625.  "A reasonable probability is a probability sufficient to undermine
> confidence in the outcome of trial." <u>Johnson v. State</u>, 325 S.C. 182, 186, 480 S.E.2d
> 733, 735 (1997) (citing <u>Strickland</u>).
>
> Applicant testified that Counsel should have subpoenaed the medical records
> of Robert Jackson, the victim, regarding his death because Jackson was shot on May
> 20, 2006, but did not die until July 8, 2006.  Applicant testified that the victim had
> preexisting heart disease, but that Counsel failed to cross-examine Dr. Charles
> Morrow, the victim's treating physician.  However, Applicant did acknowledge that
> Counsel reviewed the autopsy report during the trial and focused on the different



dates. Applicant entered into evidence the discharge summary for Robert Jackson on June 13, 2006 as Exhibit #1, the autopsy report dated July 8, 2006 as Exhibit #2, and the coroner's investigative notes dated May 20, 2006 (incident), and July 8, 2006 (death) as Exhibit #3. Applicant testified that he did not believe that the jury understood that the victim died on July 8, following the shooting on May 20, and believes that they wanted to know how the victim died.

Applicant testified that Counsel should have interviewed and called additional witnesses to support the claim of self-defense. Applicant testified that there were witnesses who could testify as to the victim having a gun, but then acknowledged that the witnesses could possibly only testify to seeing the gun, but not testify where it came from. Applicant testified that Counsel should have called Clarence Sinclair and nurses Suzanne Prince and Judy Keller as witnesses. Furthermore, Applicant testified that the testimony needed to be presented that the Applicant had permission to go into the homes.

. . . .

Counsel testified that he believed the evidence was sufficiently presented to ensure the jury knew that the victim died on July 6, 2006, not the date of the incident, May 20, 2006. Counsel testified that the Solicitor even noted the July 6 date in his opening statement. Counsel testified that he reviewed the autopsy report. Counsel testified that he interviewed Diane Jackson, the victim's daughter and girlfriend at the time of Applicant [*sic*]. Counsel testified that the Applicant asked him to track the victim's gun and find witnesses, but all the numbers for people that Applicant provided were disconnected. Counsel testified that he did not cross-examine Dr. Morrow, but did cross-examine Dr. Wren, who conducted the autopsy, as to the reasons for the victim's death. Counsel testified that he was trying to cause doubt as to the proximate cause of the victim's death. Counsel testified that he does not recall asking Dr. Wren whether or not the gunshot healed. Counsel also testified that he did not recall the documents regarding the victim's discharge from the hospital to restorative care on June 13, 2006, and acknowledged those documents might have been helpful. Counsel testified that the Applicant always alleged self-defense and was offered a forty year plea after the trial started, but Applicant turned the plea down. However, Counsel testified that he did request and receive a self-defense jury charge. Counsel testified that he did not ever see any potential mental health issues with the Applicant.

This Court finds the testimony of Counsel to be more credible that the testimony of the Applicant. The Applicant's allegation that Counsel did not conduct an adequate pre-trial investigation or prepare for trial is without merit. Following testimony and review of the transcript, it is clear that Counsel had reviewed the facts and evidence, as well as the options that Applicant faced with Applicant. The "brevity of time spent in consultation, without more, does not establish that counsel



was ineffective." Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980). To establish counsel was inadequately prepared, an Applicant must present evidence of what counsel could have discovered or what other defenses could have been pursued had counsel been more fully prepared. Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998); Skeen v. State, 325 S.C. 210, 481 S.E.2d 129 (1997) (applicant not entitled to relief where no evidence presented at PCR hearing to show how additional preparation would have had any possible effect on the result at trial). The Applicant failed to point to any specific matters Counsel failed to discover, or any defenses that could have been pursued had Counsel been more fully prepared or completed additional investigation. Therefore, this claim is denied and dismissed.

In regards to Applicant's claims that Counsel failed to interview and call witnesses to support his defense, this Court finds that the Applicant has failed to meet his burden of proof. Prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify at post-conviction relief. Underwood v. State, 309 S.C. 560, 425 S.E.2d 20 (1992); Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), cert. denied, 499 U.S. 982 (1991). The Applicant's mere speculation as to what a witnesses' testimony would have been cannot, by itself, satisfy his burden of showing prejudice. Clark v. State, 315 S.C. 385, 434 S.E.2d 266 (1993); Glover v. State, 318 S.C. 496, 458 S.E.2d 538 (1995). An Applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial. Bannister v. State, 333 S.C. 298, 509 S.E.2d 807 (1998). Although Mr. Sinclair testified, his testimony did not offer any support for the self-defense claim of Applicant and none of the other witnesses alleged to be needed were presented. Therefore, this Court finds that this claim should be denied and dismissed.

Finally, as to strategic decisions on who to cross-examine and what questions to ask, this Court finds that the Applicant failed to establish any deficiency on Counsel's behalf. This Court finds, after reviewing the file and testimony presented at the hearing, that the representation of Counsel was reasonably calculated to effect the best interests of his client, Applicant. Although the Applicant takes exception to some of the decisions made by Counsel, those decisions make practical sense in light of the evidence that was presented. This Court does not find Counsel's representation to be deficient. Furthermore, the Applicant failed to show any prejudice that may have resulted from Counsel's alleged inadequate preparation. Accordingly, these allegations are dismissed.

(App. at 572-75, ECF No. 14-3 at 74-77.)

As an initial matter, in denying and dismissing Sims's application, the PCR court found trial

counsel's testimony to be more credible than the testimony of Sims (App. at 574, ECF No. 14-3 at

Page 13 of 20



76), and with regard to the allegation of ineffective assistance of counsel, the PCR court found

Sims's testimony not credible. (App. at 575, ECF No. 14-3 at 77); see Elmore v. Ozmint, 661 F.3d

783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on

witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark

and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520

F.3d 320, 324 (4th Cir. 2008)).

Further, the PCR court reasonably found that trial counsel did not perform deficiently in

failing to subpoena the medical records of Robert Jackson, or by failing to subpoena Suzanne Prince

and Judy Keller, nor did prejudice result from the alleged failures. (App. at 575, ECF No. 14-3 at

77.) At the PCR hearing, Sims testified that trial counsel was ineffective in his cross-examination

of Dr. Charles Morrow, the treating physician of the victim, Robert Jackson. Specifically, Sims

contended that trial counsel was ineffective for failing to subpoena Jackson's medical records

because the records were relevant to show the cause of death, and it was not made clear to the jury

that Sims shot Jackson on May 20, 2006, but that Jackson did not die until July 8, 2006. (App. at

525, ECF No. 14-3 at 27.)

> On direct examination at trial, the solicitor asked treating physician Dr. Charles Morrow:
>
> Q. Do you have an opinion, Dr. Morrow, to a reasonable degree of medical certainty whether or not the gunshot wound suffered by Mr. Robert Jackson either caused or contributed to his ultimate death?
>
> A. I think what, what happened is you have a guy who is in -- 75 years old, has some underlying medical problems but is functioning okay at home and is kind of teetering on being sick and being healthy and/but is getting around. And he got shot. And that was just enough of an injury to stress his body to put him over the edge.
>        And we've all seen people who once they get a little bit of stress, we see that their organs just can't mount that response. And that's what happened in his case. And he had one organ after the next get into trouble. And so certainly the gunshot



wound is the thing that started the ball r[oll]ing for him to eventually cause him to die.

Q. And he never left the hospital from the time he was admitted May 20th. He died at the hospital, correct, or restorative care?

A. Right. He stayed in our intensive care unit and then went to our sister hospital, if you will, the hospital for restorative care, and ultimately died there.

(App. at 24, ECF No. 14-1 at 243.) Sims's trial counsel did not cross-examine Dr. Morrow.

At the PCR hearing, Sims argued that trial counsel was ineffective in failing to cross-examine Dr. Morrow on the fact that Jackson had healed from his gunshot wound, and that his death was caused by his other underlying health conditions. In support of this contention, Sims presented three exhibits to the PCR court. Exhibit 1 contained the discharge summary of Robert Jackson dated June 13, 2006. Sims read the following excerpt from Exhibit 1 into the record: "At this time, it is decided that from the trauma standpoint that the patient is stable to go to Restorative Care." (App. at 559, ECF No. 14-3 at 61.) Exhibit 2 consisted of the autopsy report of Robert Jackson, stating in part "Postmortem examination and autopsy of the body of Robert Lee Jackson, 75 year old black male, revealed essentially healed gunshot would to the neck with scar tissue in the area and no evidence of accompanying infectious process. There were multiple pathologic findings some of which were secondary to the debilitated state of this individual . . . ." (App. at 564, ECF No. 14-3 at 66.) Exhibit 3 consisted of the Spartanburg County Coroner's Investigative Notes, reinforcing the date of injury was May 20, 2006, and the date of death was July, 8, 2006. (App. at 567, ECF No. 14-3 at 69.)

Sims's trial counsel testified at the PCR hearing that although he did not cross-examine Dr. Morrow, he did cross-examine Dr. John Wren, the doctor who performed the autopsy, as to the reasons for Jackson's death. (App. at 548, ECF No. 14-3 at 50.) Counsel stated that he attempted to get Dr. Wren to admit at trial that Jackson's death was caused by one of the underlying heath

Page 15 of 20



conditions listed in the autopsy report, and not as a result of the gunshot wound. (Id.) At trial, on cross-examination, Dr. Wren was asked whether or not the gunshot would was the proximate cause of Jackson's death. Dr. Wren responded that it was his opinion that Jackson "died as a result of multisystem organ failure secondary to the consequences of a gunshot wound to the neck." (App. at 278, ECF No. 14-2 at 34.) Further, counsel testified that he presented sufficient information for the jury to understand that Jackson died a month and a half after the shooting.

The court finds the PCR court's analysis to be reasonable and concludes that Sims cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). The solicitor noted in his opening statement that Jackson was shot on May 20, 2006, and died of his injuries on July 8, 2006. (App. at 81-83, ECF No. 14-1 at 83- 85.) Moreover, as discussed above, trial counsel cross-examined Dr. Wren at length as to whether the gunshot or Jackson's underlying medical conditions ultimately caused Jackson's death. (App. at 278, ECF No. 14-2 at 34.) Because counsel conveyed to the jury that Jackson's death may have been caused by his underlying medical conditions and not the gunshot wound, Sims simply cannot demonstrate that had trial counsel cross-examined Dr. Morrow regarding the cause of Jackson's death, the result of the proceeding would have been different. Sims offers no evidence to show that Dr. Morrow's testimony on cross-examination would have differed from the testimony presented by Dr. Wren.

Similarly, Sims offers no evidence to prove his allegation that testimony from witnesses Prince or Keller would have shown that Jackson's death was caused by the hospital's malpractice and not the gunshot wound. Sims's speculative allegations are insufficient to demonstrate prejudice.



See Johnson v. McCall, C/A No. 2:09-1532-PMD, 2010 WL 936726, *4 (D.S.C. Mar. 15, 2010) ("The applicant's mere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice." Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1999) (citing Glover v. State, 318 S.C. 496, 498-99, 458 S.E.2d 538, 540 (1995))).

In sum, the PCR court reasonably concluded that Sims had "failed to prove the first prong of the Strickland test—that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that Counsel committed either errors or omissions in his representation of the Applicant." (App. at 576, ECF No. 14-3 at 78.) The PCR court further reasonably held that Sims "failed to prove the second prong of Strickland—that he was prejudiced by Counsel's performance." (Id.) Upon careful review of the record, with specific reference to the transcript and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Sims has failed to establish that counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Sims's arguments fail to demonstrate that any of the PCR court's findings were unreasonable, nor can he show that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Greene v. Fisher, 132 S. Ct. 38, 43 (2011) (observing that AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law is difficult to meet, because [its purpose] is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction") (citation and internal quotation marks omitted); Harrington, 562 U.S. at 101. Accordingly, the respondent's motion for summary judgment should be granted as to Ground Two.



**E.    Motion for Psychiatric Evaluation**

Sims also filed a motion in which he asks the court for an order for a psychiatric evaluation. (ECF No. 25.)  Sims explains that a psychiatric evaluation could show that his being abruptly taken off the medication Abilify caused his erratic behavior.  (Id.)  Sims's motion appears to assert an insanity defense as an additional claim for relief that was not included in the instant federal Petition. To the extent that Sims's motion could be construed as a motion to amend his Petition to raise this ground for relief, it should be denied as futile.  See Foman v. Davis, 371 U.S. 178 (1962); Johnson v. Oroweat Foods Co., 785 F.2d 503, 509-10 (4th Cir. 1986).  As explained in the exhaustion section above, the exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.) (citing Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011)). While a petitioner may overcome the procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," Coleman, 501 U.S. at 750, Sims's motion does not provide any reason for alleging an entirely new claim at this time. Consequently, the court should not review Sims's insanity defense claim.



## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary

judgment (ECF No. 15) be granted and Sims's Petition denied.  It is further recommended that

Sims's motion for a psychiatric evaluation (ECF No. 25) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 4, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).